Tammy D. SCARBROUGH, Carol C. Davis, Plaintiffs-Appellees,

v.

Bryant MYLES, Jr., Chuck Hall, Defendants-Appellants.

No. 00-14063

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

March 29, 2001.

Appeal from the United States District Court for the Southern District of Alabama. (No. 99-00526-CV-BH-M), William B. Hand, Judge.

Before BIRCH, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Bryant Myles, Jr. and Chuck Hall, both Mobile, Alabama, police officers and detectives with the Property Crimes Unit, respectively appeal their denials of absolute and qualified immunity in district court.[1] On April 6, 1997, Myles and Hall, wearing plain clothes, went to the Mobile Flea Market accompanied by Jim Holder, a trademark infringement investigator and independent contractor who represents various corporations in sting operations with local police departments. Hall purchased two Nike pendants, one from each of the plaintiffs-appellees Tammy D. Scarbrough and Carol C. Davis, employees of Marion Douglas, who owned the booth.

Hall showed the pendants to Holder, who verified that they bore unauthorized trademarks.[2] Hall later averred that he determined that this verification by Holder, in conjunction with Scarbrough and Davis's sale of cheaply priced goods bearing unauthorized trademarks, which were in proximity to other booths selling goods with unauthorized trademarks, was sufficient probable cause for their arrests. Hall subsequently returned to the booth, arrested Scarbrough and Davis, and handcuffed them together while he arrested other sellers of counterfeit goods. Scarbrough, Davis, and the other arrestees were transported to Mobile Police

---

[1]This case originally was filed in the Circuit Court of Mobile County and was removed to federal court for the Southern District of Alabama, which exercised supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law causes of action.

[2]Although denied by Hall, Scarbrough and Davis contend that Holder subsequently advised Hall that he should reconsider arresting Scarbrough and Davis because the Alabama statute requires knowledge, and "they did not admit knowing the jewelry was unauthorized." R2-29-3 n. 2.

Headquarters and then to Mobile Metro Jail. Their employer, Douglas, posted bond, and they were released that night.

At the preliminary hearing on June 19, 1997, Myles testified that Nike, Inc. had advised in a letter that such items were being sold, which was the basis for the investigation.[3]  Based on this evidence, the state judge determined that there was probable cause to bind Scarbrough and Davis to the grand jury.  The charges against them subsequently were no billed by the grand jury.  Scarbrough and Davis then filed this 42 U.S.C. § 1983 action and alleged that the City of Mobile, Myles, and Hall falsely arrested and/or imprisoned them and maliciously prosecuted them.[4]  The district judge denied qualified immunity to Hall for his arrests of Scarbrough and Davis and to Myles for his testimony at the preliminary hearing.

We review *de novo* the denial of qualified or absolute immunity.  *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir.1999).  Qualified immunity generally shields § 1983 government defendants from liability, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' "  *Lassiter v. Alabama A&M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).  Because qualified immunity is the "usual rule" for government actors sued in their individual capacities, it will shield them unless case law establishes a bright line in "a concrete and factually defined context" that makes a violation of federal law obvious.  *Id.* "Thus, a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred."  *Jackson v. Sauls,* 206 F.3d 1156, 1165 (11th Cir.2000).

Prior to consulting with Holder, Hall determined that he had probable cause to arrest Scarbrough and Davis based on three factors:  (1) each had sold him an unlawful Nike pendant, (2) in his opinion, the price of the pendants was below what he would have expected a similar, legitimate item to cost,[5] and (3) numerous

---

[3]Scarbrough and Davis have challenged the existence of this letter.

[4]The City of Mobile was granted summary judgment and is not a party in this appeal.

[5]Hall purchased a Nike pendant from Scarbrough for $3 and a gold Nike pendant from Davis for $11. R1-20-Exh.7 at 10 (Hall's testimony at the preliminary hearing).

other sellers were engaged in selling trademark infringing items near Scarbrough and Davis.[6] The fact that the pendants that Scarbrough and Davis sold to Hall infringed Nike's trademark was confirmed by Holder and is undisputed. Significantly, all that is required for qualified immunity to be applicable to an arresting officer is "*arguable* probable cause to believe that a person is committing a particular public offense," *Redd v. City of Enterprise,* 140 F.3d 1378, 1384 (11th Cir.1998); "that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs," *id.* at 1382 (citation omitted). *See Jones,* 174 F.3d at 1283 n. 3 ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").

The district judge denied Hall qualified immunity, however, because Holder subsequently told Hall that he should reconsider the arrests because he had not obtained admissions from Scarbrough and Davis that they knew that the pendants infringed Nike's trademark before he arrested them.[7] Probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.[8] We have no clearly established law that places such a burden on Hall as the arresting officer.

Additionally, qualified immunity is analyzed under a standard of "[o]bjective legal reasonableness." *Lassiter,* 28 F.3d at 1150; *see Jackson,* 206 F.3d at 1165. Our inquiry is whether Hall, an experienced investigating officer concerning the sale of trademark infringing goods, had sufficient objective evidence to make the arrests of Scarbrough and Davis and not Holder's opinion or view of the state law subsequent to the arrests. *See Lassiter,* 28 F.3d at 1150 (recognizing that "qualified immunity is a doctrine of practical

---

[6]Hall also testified at the preliminary hearing that the reason for the officers' investigation of illegal sales at the Mobile Flea Market on April 6, 1997, was in response to telephone calls reporting sales of unlawful items bearing infringing trademarks at the flea market. *Id.* at 14.

[7]Under Alabama law, it is a Class C felony to copy or reproduce a trademark for a commercial purpose knowing that the trademark has been used without the owner's consent. Ala.Code § 13A-8-10.4(b)(4), (c) (1975).

[8]Our inquiry in qualified-immunity analysis is whether the government actor's conduct violated clearly established law and not whether an arrestee's conduct is a crime or ultimately will result in conviction. Police officers are not expected to be lawyers or prosecutors. *See Lassiter,* 28 F.3d at 1152 n. 8 (recognizing that it is " 'unfair and impracticable' to hold public officials to the same level of knowledge as trained lawyers") (quoting *Davis v. Scherer,* 468 U.S. 183, 196 n. 13, 104 S.Ct. 3012, 3020 n. 13, 82 L.Ed.2d 139 (1984)). The district judge focused on the arrestees instead of the arresting officer in his decision to deny Hall qualified immunity. The issue should have been whether Hall violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime.

application to real-life situations" at the time the government conduct occurred and is not evaluated "by hindsight, based on later events"). Because Hall violated no clearly established law in formulating probable cause to arrest Scarbrough and Davis, he is entitled to qualified immunity.[9]

The district judge denied immunity to Myles, who was not involved in the arrests of Scarbrough and Davis, because he concluded that there were material questions as to whether, in his testimony at the preliminary hearing, Myles "deliberately lied about the existence of a letter from Nike warning against the sale of unauthorized merchandise in a effort to establish probable cause otherwise lacking for the arrest of the plaintiffs."[10] R2-29-8. At the state preliminary hearing to determine probable cause for the arrests, Myles testified that a letter warning vendors to cease selling items bearing infringing trademarks, sent by Nike, Inc.

---

[9]We note that the district judge determined in the same order that there was no evidence that the arrests precluded discretionary-function immunity, which Alabama law extends to municipal police officers unless their conduct is willful, malicious, or in bad faith. R2-29-6-7; *see* Ala.Code § 6-5-338(a). In addressing discretionary-function immunity and qualified immunity, our court has stated that "[u]nder both Alabama law and federal law, the core issue is whether a defendant violated clearly established law." *Sheth v. Webster,* 145 F.3d 1231, 1239 (11th Cir.1998) (per curiam); *see Taylor v. Adams,* 221 F.3d 1254, 1260 n. 9 (11th Cir.2000) ("Discretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law, immunity from suit."), *cert. denied,* --- U.S. ----, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). Under discretionary-function-immunity analysis, a court first determines whether the government defendant was performing a discretionary function when the alleged wrong occurred; if so, "the burden shifts to the plaintiff to demonstrate that the defendant[ ] acted in bad faith, with malice or willfulness in order to deny [him] immunity." *Sheth,* 145 F.3d at 1239; *see Taylor,* 221 F.3d at 1261 ("The [government defendants] are entitled to discretionary-function immunity if, on the summary-judgment facts, their acts at the scene were discretionary and [the plaintiff] has not presented evidence sufficient to create a jury question regarding whether they 'acted in bad faith, [or] with malice or willfulness.' " (quoting *Sheth,* 145 F.3d at 1239) (third alteration in original)).

We also have found federal qualified immunity to be more inclusive than Alabama discretionary-function immunity. Although the Alabama Supreme Court has equated qualified immunity with discretionary-function immunity, we have recognized that federal qualified immunity may not be defeated by willfulness, malice, or bad faith. *Sheth,* 145 F.3d at 1240 & n. 8. The district judge correctly concluded that these motivations were not present in this case, which left him with the essential determination of whether clearly established law, known by a reasonable police officer, was violated by Hall in arresting Scarbrough and Davis. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) ("[T]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful."), *modified on other grounds,* 14 F.3d 583 (11th Cir.1994) (per curiam). His qualified-immunity analysis was inconsistent with his discretionary-function-immunity determination and faltered when he changed from this inquiry, based on the objective factors from which Hall derived probable cause for the arrests, to the arrestees' knowledge that the pendants infringed Nike's trademark, an element of the crime under state law for which Scarbrough and Davis potentially could have been prosecuted. *See Sheth,* 145 F.3d at 1240; *infra* n. 8.

[10]Rather than analyzing the immunity applicable to Myles under qualified immunity, the district judge should have used absolute immunity, since Myles's alleged misconduct occurred during his testimony at the state preliminary hearing, and absolute immunity was pled as an affirmative defense.

and other trademark holders, was posted obviously at the Mobile Flea Market.[11]  Scarbrough and Davis

---

[11]Myles's direct testimony at the preliminary hearing responding to Scarbrough and Davis's counsel was as follows:

Q       ... Did you also attend the flea market that day?

A       Yes, sir, I did.

Q       Did you ever have any contact prior to this date with the owner or manager of the flea market?

A       Not directly, again, through Mr. Holder that ... *a letter was sent to the—*

Q       That's your understanding?

A       *It was sent by the Nike Corporation and several other trademark holders that a letter was sent to them telling them not to sell any of these type of items.*

Q       Do you have a copy of that letter?

A       No, sir, I do not.

Q       Have you seen that letter?

A       Yes, sir, I have.

Q       Do you have it in your files?

A       I do not have it in this file for particularly, these particular cases.  I have seen the letter, yes, sir.

Q       Did you verify that that letter was received?

A       *It was posted.  I went out there and saw it, personally, on the cartboard right outside the office at the flea market and the flea market was aware that they—that items were being sold, yes, sir.*

Q       And did you talk to the owner or manager?

A       When?

Q       Prior to these arrests?

A       Prior to these arrests?

Q       No, sir.  *Did you see it prior to these arrests, did you see the letter?*

A       *I saw it prior, yes, sir.*

Q       *Did you see it posted there, prior?*

A       *Yes, sir.*

       R1-20-Exh. 7 at 16-17 (emphasis added).  On cross-examination, Myles testified as follows concerning the posted warning letter in response to the prosecutor's questions:

Q       Bryant, *the letter that was on the cartboard, where is this cartboard?*

A       *It's right outside the office, right where the people that rent the booths are from the office.*

contend that Myles's testimony regarding the letter was intentionally false to establish probable cause for the arrests, and the district judge seemed influenced by this reasoning. Myles, however, was not the arresting officer and did not need to establish probable cause for his conduct. He testified as a witness concerning his memory of the contents of the letter posted at the flea market, which warned vendors to stop selling trademark infringing goods.

In § 1983 cases, absolute immunity is accorded "to functions 'intimately associated with the judicial phase of the criminal process.' " *Jones,* 174 F.3d at 1281 (quoting *Malley v. Briggs,* 475 U.S. 335, 342, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)). A preliminary hearing in Alabama is a judicial proceeding to determine probable cause. *DeFries v. State,* 597 So.2d 742, 744 (Ala.Crim.App.1992); Ala.Code § 15-11-1; *see Ex Parte Wood,* 629 So.2d 808, 811 (Ala.Crim.App.1993) (recognizing that a preliminary hearing is a critical stage in the criminal process where a defendant has the right to counsel). Police officers have the same absolute immunity as lay witnesses in testifying at trial or before a grand jury.[12] *Jones,* 174 F.3d at

---

Q       Okay. And what—

A       *It's displayed in a public area.*

Q       All right. And what does the letter say?

A       *It—to my best recollection, it has been a little while that I have seen this letter, that—that the flea market is to desist and [ ]cease from individuals that are renting booths, from selling Nike, Tommy Hilfiger, and other trademarked items.*

Q       And so it list[ed] certain trademarked items—

A       Yes, sir—yes, ma'am.

Q       —and requests that that be stopped immediately?

A       Yes, ma'am.

        *Id.* at 19 (emphasis added).

[12]In preserving the integrity of the judicial process, absolute immunity for witnesses minimizes intimidation that might discourage testifying and "enhances reliability because those who testify will be less likely to distort their testimony in favor of a future plaintiff in a civil suit for damages." *Strength v. Hubert,* 854 F.2d 421, 424 (11th Cir.1988) (per curiam); *see Holt v. Castaneda,* 832 F.2d 123, 127 (9th Cir.1987) ("In adversarial pretrial proceedings as well as at trial, absolute witness immunity is essential if the truth-seeing function of the proceeding is to be fully served."). Additionally, absolute immunity serves a purpose for police-officer witnesses that is different from lay witnesses. Police officers testify in numerous cases every year, and defendants often convert resentment for being convicted into allegations of perjury by the state's official witnesses. If a police-officer witness could be made to answer in court each time that a disgruntled defendant charged him with wrongdoing, his energy and attention would be diverted from his responsibilities of enforcing criminal law. Consequently, our court rejected the notion that an exception to the doctrine of absolute immunity for witnesses should exist when a police officer is alleged to have committed perjury during a criminal trial. *Jones,* 174 F.3d at 1287-88. Nevertheless,

1281. As with any witness testifying under oath, the penalty for false testimony is potential prosecution for perjury.[13] *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983); *Jones,* 174 F.3d at 1281. Because a preliminary hearing is a judicial proceeding, Myles enjoys absolute immunity for civil liability damages resulting from his testimony. *See Williams v. Hepting,* 844 F.2d 138, 143 (3d Cir.1988) (holding that a witness who testified at a preliminary criminal hearing in state court would be entitled to absolute immunity from liability in a subsequent civil rights suit for damages based on alleged perjured testimony during that proceeding). He also has absolute immunity from state-law claims. *See Cutts v. American United Life Ins. Co.,* 505 So.2d 1211 (Ala.1987) ("Absolute privilege exists in favor of those involved in judicial proceedings, including ... witnesses...."). Consequently, Myles is entitled to absolute immunity for his testimony at the preliminary hearing.[14]

Accordingly, we REVERSE the district judge's denial of qualified immunity to Hall and Myles and REMAND with instructions to grant qualified immunity to Hall and absolute immunity to Myles.

---

there is no evidence in the record that Myles testified falsely at the preliminary hearing regarding his recollection of the warning sign posted at the flea market.

[13] The preliminary hearing was adversarial, and Myles's testimony was elicited under oath in open court and was subject to cross-examination under the supervision of the presiding judge as well as criminal prosecution for perjury.

[14] Apparently, the district judge was led astray by defense counsel's questioning Myles in state court concerning his knowledge of whether he knew if Scarbrough and Davis knew if selling the Nike pendants was unlawful. The state judge allowed this questioning over the prosecutor's objection and stated: "If he knows, he can answer the question." R1-20-Exh. 7 at 18. Thereafter, the following question was asked by defense counsel and answered by Myles: "Do you have any knowledge, as to whether or not [Scarbrough and Davis] had direct knowledge that the selling of these items would be an illegal act? No, sir." *Id.* Again, the district judge's focus was misplaced; it should not have been on Scarbrough and Davis's knowledge, which is relevant to proof of the crime, because this § 1983 case concerns the conduct of the police officers.