Raymon L. HALL, et al., Plaintiffs,

v.

Barbara STEWART, et al., Defendants.

No. 03–60166–CIV.

United States District Court,
S.D. Florida.

Jan. 16, 2004.

Daniel Robert Aaronson, Esq., Benjamin & Aaronson, Fort Lauderdale, FL, for Plaintiff.

Bruce S. Rogow, Esq., Beverly A. Pohl, Esq., Fort Lauderdale, FL, for Defendant.

### ORDER GRANTING MOTION TO DISMISS

K. MICHAEL MOORE, District Judge.

**THIS MATTER** is before the Court upon the Defendants' Motion to Dismiss (DE # 3). The Court, having considered the motion, the response and reply thereto, and being otherwise fully advised in the premises, enters this order granting Defendants' Motion to Dismiss.

### FACTUAL BACKGROUND

This 42 U.S.C. § 1983 action stems from a police operation at a "swingers' club" in Broward County, Florida. On February 6, 1999, the Broward County Sheriff's Department ("the BSO") conducted an undercover raid of an establishment known as The Trapeze. Officers posing as patrons entered the establishment and observed individuals engaging in sexual activity. Patrons seen engaging in sexual activity, including the Plaintiffs, were issued notices to appear in court to answer charges of lewdness in violation of Fla. Stat. § 796.07.

At all times relevant to this action, The Trapeze was a commercial establishment that allowed patrons to engage in sexual activity on the premises. Patrons-all consenting adults-frequently undressed and

had sex in plain view of one another. Most sexual activity occurred in the rear section of the club, which consisted of a locker room for undressing and a room containing at least one bed and couch ("the back room"). Signs displayed in the front lobby area warned that persons offended by nudity and/or sexual activity should not enter.

Sergeant (now Lieutenant) Barbara Stewart of the BSO directed the undercover operation at the Trapeze. She instructed a team of officers to enter the club posing as patrons, look for sexual activity, and arrest those patrons engaged in sexual activity once the raid began. Upon her instructions, Deputies Kim Lapier and Troy Santamaria entered The Trapeze on the evening of February 6, 1999. While seated on a couch in the back room, the Deputies observed Plaintiffs Raymon and Lynette Hall engage in oral sex and sexual intercourse. Santamaria then left the back room and notified Stewart, who remained in the front area during the raid. Officers thereafter seized control of the establishment and issued Plaintiffs notices to appear in court to answer charges of lewdness.

Plaintiffs seek damages from Stewart and other BSO deputies for arresting them without probable cause in violation of the Fourth and Fourteenth Amendments. Defendants move to dismiss Plaintiffs' complaint, arguing that there was no arrest,[1] and raising the defenses of probable cause and qualified immunity. Plaintiffs oppose the Motion, arguing, *inter alia,* that § 796.07 contains a well-settled "offensiveness to others" element barring Defendants from prevailing on a probable cause or qualified immunity defense. For the reasons set forth below, the Court finds that Defendants are entitled to qualified immunity.

### MOTION TO DISMISS STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On such a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Specifically, "[i]t is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting)(quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### DISCUSSION

 To state a claim under 42 U.S.C. § 1983, a plaintiff must prove that the

---

**1.** Defendants argue that the issuance of a notice to appear is not equivalent to an arrest for purposes of a federal civil rights claim.

The Court declines to address this argument, and dismisses Plaintiffs' complaint on alternative grounds.

defendant, under color of state law, deprived him of a right protected under the Constitution or laws of the United States. *Little v. City of N. Miami,* 805 F.2d 962, 965 (11th Cir.1986). Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Using this standard, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■■■ To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002). Here, there can be no doubt that Stewart and the other BSO deputies were acting within the scope of their discretionary authority when they arrested Plaintiffs. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate." *Id.*

■■ The Supreme Court has established a two-part test for evaluating claims of qualified immunity. First, the Court must determine whether the alleged facts show that the defendant's conduct violated the plaintiff's constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, if the

Court finds that a constitutional right has been violated, it must then determine whether that right was "clearly established." *Id.* The Supreme Court recently expounded on the standard for whether the law is "clearly established," holding that the standard is not whether preexisting law provides a set of "materially similar" facts, but "whether the state of the law [at the time in question] gave [the defendants] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

■■■ To meet their burden under this analysis, Plaintiffs must show that Defendants lacked arguable probable cause to arrest them. Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiffs." *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir. 1998) (quotations omitted). Moreover, arguable probable cause "does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough v. Myles,* 245 F.3d 1299, 1302–03 (11th Cir.2001). Rather, "[t]he issue ... [is] whether [the officer] violated clearly established law in making the arrests based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime". *Id.* at 1303 n. 8.

Plaintiffs contend that Defendants lacked arguable probable cause because no reasonable officer would have believed that Plaintiffs' conduct violated Fla. Stat. § 796.07. Section 796.07 prohibits prostitu-

tion, lewdness, or assignation.[2] Under section 796.07(1)(b), "lewdness" is "any indecent or obscene act." Additionally, Plaintiffs argue, to be lewd under § 796.07, conduct must offend someone other than a law enforcement officer. Plaintiffs assert that because their conduct at The Trapeze did not satisfy this "offensiveness to others" element, Defendants violated "clearly established" law in arresting them.

Plaintiffs' argument hinges on whether an "offensiveness to others" element was "clearly established" at the time of the arrests. The statute on its face does not contain an express "offensiveness to others" element. Nor have Plaintiffs cited any case decided before the arrests construing § 796.07 to include an "offensiveness to others" element. Rather, Plaintiffs draw support from Florida Supreme Court decisions interpreting the term "lewdness" in the context of other statutes.

Plaintiffs direct the Court to *Cheseb-rough v. State*, 255 So.2d 675 (Fla.1971) and *Bell v. State*, 289 So.2d 388 (Fla.1973). In *Chesebrough*, the Florida Supreme Court upheld the constitutionality of Fla. Stat. § 800.04, prohibiting lewd assaults or acts upon or in the presence of a child. In that context, the Court discussed the meaning of "lewdness." "It has been held sufficient if it is an intentional act of lewdness, offensive to one or more persons present." *Id.* at 678. Subsequently, in *Bell*, the Court cited *Chesebrough* in upholding the constitutionality of three statutes including § 796.07. *Bell*, 289 So.2d at 390. Given the language in *Chesebrough*,

Plaintiffs' argue, *Bell* should be read to establish an "offensiveness to others" element within § 796.07.

Plaintiffs also rely on *Schmitt v. State*, 590 So.2d 404 (Fla.1991). There, the Florida Supreme Court interpreted the term "lewd" in the context of two felony statutes, Fla. Stat. § 827.071 (prohibiting the knowing possession of any depiction known to include sexual conduct by a child) and Fla. Stat. § 800.04:

> Under Florida criminal law the terms "lewd" and "lascivious" are synonymous: Both require an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others.... Acts are neither "lewd" nor "lascivious" unless they substantially intrude upon the rights of others. *Id.* at 410.

Section 796.07 is distinguishable from those statutes, however, because it provides a statutory definition of lewdness.

The Court finds that none of the cases cited by Plaintiffs establish an "offensiveness to others" element within § 796.07 so as to constitute the type of notice contemplated by 42 U.S.C. § 1983. Moreover, at the time of the arrests, there was no authoritative judicial interpretation of "lewdness" under Fla. Stat. § 796.07. The only decision directly on point at the time of the arrests casts doubt upon the existence of an "offensiveness to others" element. *State v. Willets*, 4 Fla. L. Weekly Supp. 586a (Fla. 15th Jud. Cir.App.Div.1997)

---

2. The statute provides, in relevant part:
 (2) It is unlawful:
 . . .
 (e) To offer to commit, or to commit, or to engage in, prostitution, lewdness, or assignation.
 (f) To solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation.

(g) To reside in, enter, or remain in any place, structure, or building, or to enter or remain in any conveyance for the purpose of prostitution, lewdness, or assignation.
(h) To aid, abet, or participate in any of the acts or things enumerated in this subsection.
Fla. Stat. § 796.07 (West 2004).

("The issue before us is whether section 796.07, Florida Statutes (1993) requires that someone other than law enforcement be offended by Defendant's behavior. We find it does not . . .").[3]

Because no "offensiveness to others" element was clearly established under Fla. Stat. § 796.07 at the time of the arrests, Defendants are entitled to qualified immunity. "Reasonable officers in the same circumstances and possessing the same knowledge" as Defendants could have believed that probable cause existed to arrest Plaintiffs. *Redd*, 140 F.3d at 1382. Accordingly, Plaintiffs' complaint does not allege facts sufficient to set forth a cause of action under 42 U.S.C. § 1983. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001) (applying the qualified immunity defense at the Rule 12(b)(6) stage).

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Complaint must be **DISMISSED** with prejudice pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Clerk of the Court is directed to mark this case as **CLOSED**. All pending motions not otherwise ruled upon are **DENIED** as moot.

---

3. Circuit court and county court opinions are not typically cited as precedent. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir.2003) (finding that a law is "clearly established" by precedents of the Supreme Court, the Eleventh Circuit, or "the highest court of the state in which the case arose").