[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13908
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-20998-JAL


CAROLYN BAILEY,
TRAVIS BAILEY,

                                                          Plaintiffs - Appellees,

                              versus

CITY OF MIAMI BEACH, et al.,

                                                          Defendants,

OFFICER JOSE REINA,
Individually,
OFFICER DIMITRI GOTSIS,
Individually,

                                                          Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 25, 2012)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Police officers Dimitri Gotsis and Jose Reina appeal the district court's denial of their motion for summary judgment on two civil rights claims filed against them by Travis Bailey and his mother, Carolyn Bailey. The officers argue that they are entitled to summary judgment based on qualified immunity.

## I.

Travis and Carolyn Bailey traveled to Miami, Florida, for vacation. After checking in to a hotel, Ms. Bailey went to the room and her son went for a walk. During Travis Bailey's walk, Miami Police Officer Alexander Torres stopped him and asked him about his identity, where he was from, and where he was staying. During the stop, Officer Torres received notice over the radio that Travis Bailey had an outstanding traffic warrant in North Carolina. Travis Bailey got scared and ran away.

Officer Torres called for backup, and several officers searched for Travis Bailey by using his driver's license and a hotel room key card that he left behind when he fled. After an hour of searching, the officers went to the hotel where Travis Bailey was staying with his mother. The hotel clerk confirmed that the key was for room 603, which was registered to a guest named "Bailey." Officers Wayne Holbrook, Dimitri Gotsis, and Jose Reina then went to that room. Officer

2

Gotsis also brought his police dog.[1]

The officers knocked on the door to room 603, announced themselves as police, and requested entry. Ms. Bailey opened the door with its chain still secured and looked out to confirm who was there. Without incident or delay, Ms. Bailey closed the door, removed the chain, and opened the door. The officers told her that they were looking for Travis Bailey and asked where he was. Ms. Bailey raised her hands and said "Duh" because her son was standing next to the bed, wearing only his underwear, with his hands raised in surrender. Officers Reina and Holbrook then rushed toward Travis Bailey and put him in handcuffs. One of the officers screamed "Get that F'ing bitch out of this room now," and Ms. Bailey was pushed into the hallway.

Officers Reina and Holbrook then beat Travis Bailey with a police baton for two to three minutes, striking him fifteen times in the head, back, thighs, and legs. Officer Gotsis stood inside the room the entire time, watching the beating and holding his police dog. Although he had a clear and unobstructed view of the entire incident, Officer Gotsis never told Officers Reina and Holbrook to stop,

---

[1] The parties dispute what happened next, but when reviewing the denial of a motion for summary judgment based on qualified immunity, "we make no credibility determinations or choose between conflicting testimony, but instead accept [plaintiffs'] version of the facts drawing all justifiable inferences in [their] favor." Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008).

never attempted to physically stop them, and never used his radio to request assistance.

The three officers eventually removed Travis Bailey from the room and put him in a police car. They then returned to the room and arrested Ms. Bailey for obstruction of justice and resisting an officer without violence. The charges against Ms. Bailey were later dropped.

## II.

Ms. Bailey and her son filed suit against Officers Holbrook, Reina, Torres, Gotsis, and the City of Miami Beach, making various civil rights claims under 42 U.S.C. § 1983, a common law claim of battery, and a common law claim of false arrest. The officers moved for partial summary judgment on most of the claims on the basis of qualified immunity, though they conceded only for summary judgment purposes that there was sufficient evidence to establish that Officers Holbrook and Reina used excessive force when arresting Travis Bailey. The district court granted the summary judgment motion on some of the claims, but denied it with respect to (1) Travis Bailey's claim against Officer Dimitri Gotsis for failure to intervene during the beating; and (2) Ms. Bailey's claim against Officer Jose Reina for unlawful arrest. The court reasoned that summary judgment was inappropriate for those two claims because the evidence, when construed in the light most

4

favorable to Ms. Bailey and her son, could establish that the officers violated clearly established constitutional rights. The officers then filed this interlocutory appeal.

III.

"We review <u>de novo</u> the denial of a motion for summary judgment based on qualified immunity." <u>Roberts v. Spielman</u>, 643 F.3d 899, 902 (11th Cir. 2011). "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." <u>Jean-Baptiste v. Gutierrez</u>, 627 F.3d 816, 820 (11th Cir. 2010).

The doctrine of qualified immunity shields from civil liability police officers and other government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the alleged misconduct. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). To determine whether the doctrine applies, we consider "(1) if the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated; and (2) whether the right violated was clearly established." <u>Roberts</u>, 643 F.3d at 904 (quotation marks and alteration omitted). "[W]e are free

5

to consider these elements in either sequence . . . ." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009)).

## A.

Officer Gotsis argues that he is entitled to qualified immunity on Travis Bailey's failure to intervene claim because he did not have a reasonable opportunity to stop Officers Holbrook and Reina from using excessive force. It is clearly established in this Circuit "that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Velazquez v. City of Hialeah, 484 F.3d 1340, 1341–42 (11th Cir. 2007) (quotation marks omitted). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008).

The facts of this case are similar to the facts in Priester v. City of Riviera Beach, Florida, 208 F.3d 919 (11th Cir. 2000). There, two officers chased a burglary suspect to a canal, where the suspect surrendered, lying down on the ground. Id. at 923. Even though the suspect had fully complied with the officers' commands, one of the officers ordered his police dog to attack the suspect. Id. at

6

923–24.  The second officer watched the incident from the top of the canal and did nothing to stop the attack.  Id. at 925.  When the arrestee brought suit against the second officer for failing to intervene, we held that the officer was not entitled to qualified immunity because "the dog's attack on Plaintiff may have lasted as long as two minutes . . . [, which] was long enough for a reasonable jury to conclude that [the officer] had time to intervene and to order [the first officer] to restrain the dog."  Id. at 925 (emphasis in original).  The officer violated the arrestee's clearly established rights by watching "the entire event" while "in voice contact" with the first officer and doing nothing to stop the dog attack.  Id.

The same thing happened here, except it is alleged that officers directly, instead of indirectly through a police dog, did the attacking.  Officer Gotsis watched for two to three minutes as Officers Holbrook and Reina attacked Travis Bailey, violating his constitutional rights.  Just like the second officer in Priester, Officer Gotsis "observed the entire attack and had the time and ability to intervene, but he did nothing."  Id. at 927.  Officer Gotsis was "in voice contact" with the other officers and had plenty of time to order them to stop the attack, but he instead chose to stand by and watch them hit Travis Bailey with a baton fifteen times.  "No particularized case law was necessary for a reasonable police officer to know that,

7

on the facts of this case and given that the duty to intervene was clearly established, he should have intervened." Id.

Officer Gotsis argues, however, that he had no reasonable opportunity to intervene because he was too occupied controlling his agitated police dog. Viewing the evidence in the light most favorable to Travis Bailey, however, Officer Gotsis was able to do something to stop the alleged beating, even if he also had to restrain his dog. The beating lasted for two to three minutes. Controlling the dog may have prevented Officer Gotsis from physically stopping the attack, but he could have demanded that the other two officers stop or, viewing the evidence in the light most favorable to the plaintiff, he could have used his radio to call for help. At the very least, Officer Gotsis' claim that he could do nothing because he was holding the dog creates a dispute of material fact that should be resolved by a jury.

B.

We now turn to Officer Reina's argument that the district court should have granted summary judgment in his favor on Ms. Bailey's wrongful arrest claim because he had arguable probable cause to make the arrest. It is clearly established that "an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." Durruthy v. Pastor, 351 F.3d

8

1080, 1088 (11th Cir. 2003). A police officer is entitled to qualified immunity for making an arrest if he had "arguable probable cause" to make the arrest. Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001) (emphasis and quotation marks omitted); see also Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). When performing our arguable probable cause analysis, we look at the information known to the officer at the time of the arrest. Jones, 174 F.3d at 1283 n.4.

Accepting as true Ms. Bailey's version of the facts, as we must at this stage of proceedings, Officer Reina did not have arguable probable cause to arrest her. When the three officers arrived at room 603, they knew only that the room was registered to "Bailey" and that Travis Bailey might be inside. The officers did not know Ms. Bailey was in the room until she opened the door, and when she opened the door, she complied with all of the officers' instructions and left the room without resistance. Those alleged facts establish only that she was in a room with someone suspected of committing a crime elsewhere, which is not enough to create arguable probable cause for arrest. See Holmes v. Kucynda, 321 F.3d 1069, 1081

9

(11th Cir. 2003) ("This circuit's case law has clearly established that mere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest." (quotation marks and alteration omitted)); cf. Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 342 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

Officer Reina argues that he had arguable probable cause to believe that Ms. Bailey was helping her son escape capture because she knew that her son was running from the police, and yet she failed to call the police to report his whereabouts and was found harboring him in a hotel room. Those assertions, however, assume that Ms. Bailey knew her son was running from the police, and the record is clear that, when he arrested her, Officer Reina did not know whether she was aware that her son had been chased by the police. Here again, we are left only with the fact that Ms. Bailey was in a room with her son about an hour after his encounter with Officer Torres, and that fact alone did not create arguable probable cause for her arrest.

Officer Reina also asserts that he had arguable probable cause to arrest Ms. Bailey because she had helped her son avoid arrest by initially opening the door with the latch engaged. He argues that "there is no plausible reason for Carolyn to

10

have kept the latch engaged in initially opening the door," and even describes her "latching the door" as "unlawful conduct." Ms. Bailey, however, testified in her deposition that she kept the door latched until confirming the identity of the men who were banging on the door and yelling "open this F-ing door now," and once she confirmed that the men banging on the door were police officers, she immediately removed the latch and let the officers inside. Assuming that her testimony is true, nothing about that chain of events gave Officer Reina arguable probable cause to arrest Ms. Bailey.

Finally, Officer Reina claims he had arguable probable cause to arrest Ms. Bailey because she lied about whether her son was in the hotel room and because she attempted to obstruct the officers when they tried to enter the room. She has testified to the contrary, however, and at this stage of proceedings we must accept her version of events. Given her testimony, and viewing the evidence in the light most favorable to Ms. Bailey, Officer Reina did not have arguable probable cause to arrest her for any offense.

**AFFIRMED.**