[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12388
_____

D.C. Docket No. 6:15-cv-00807-PGB-DCI

WILLIAM RIVERA,
TROY COPELAND,

Plaintiffs – Appellants,

versus

JORGE CARVAJAL, Badge No. 1563, in his individual capacity,
TODD RAIBLE, Badge No. 7046, in his individual capacity, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 27, 2019)

Before TJOFLAT, MARTIN, and TRAXLER,[*] Circuit Judges.

TRAXLER, Circuit Judge:

Plaintiffs-Appellants William Rivera and Troy Copeland, along with a third plaintiff, Michael Montanez, brought this lawsuit under 42 U.S.C. § 1983, against several officers from the Volusia (Florida) County Sheriff's Office, for alleged violations of their Fourth Amendment rights.  The allegations arise out of the officers' response to a suspected burglary at Montanez's home, the seizures and arrests of Rivera and Copeland immediately outside the home, and the ensuing warrantless entries and searches of the home.  The only remaining defendant in this appeal is Officer Todd Raible—the officer who observed what he believed to be a burglary in progress and who initiated the seizures of Rivera and Copeland prior to entering the home.

In this appeal, Rivera and Copeland challenge the district court's order granting summary judgment to Officer Raible on their § 1983 unlawful-seizure claims.  Copeland also appeals the district court's earlier order granting Officer Raible's motion to dismiss his § 1983 claim that he was unlawfully arrested for being in possession of a suspended driver's license in violation of Florida law.  After careful consideration, and with the benefit of oral argument, we affirm.

---

[*] Honorable William B. Traxler, Jr., United States Circuit Judge for the Fourth Circuit, sitting by designation.

I.

This is not the first time we have addressed the facts underlying this lawsuit. Although the district court granted Officer Raible qualified immunity from Rivera's and Copeland's unlawful-seizure claims, the court denied the officers' motion for summary judgment on Montanez's unlawful entry and search claims. In the prior interlocutory appeal from the district court's denial of qualified immunity on Montanez's claims, we addressed at length the undisputed facts, from which we borrow heavily. *See Montanez v. Carvajal*, 889 F.3d 1202 (11th Cir. 2018).

On March 29, 2011, Officer Raible was driving his unmarked patrol car on his way to work and drove through an area that was known to him to have been experiencing a rash of daytime burglaries. As he passed by the home at 1127 West New York Avenue, Officer Raible noticed a white male in his early 20s—later identified as Rivera—talking on a cell phone in front of the home. There were no cars in the driveway. Rivera "seemed anxious and kind of hunched as he paced up and down in front of the house." *Id.* at 1205 (internal quotation marks omitted). Suspicious, Officer Raible surveilled the area around the home and his "suspicions deepened when, as he watched, Rivera walked down a side street toward the back of the dwelling." *Id.* There, Raible observed a second young man—later identified as Copeland—who appeared to Raible to be huddling or hunched near

the back door of the home.  Based on his experience, and his knowledge of the recent burglaries in the area, Officer Raible believed that Copeland was acting "as a 'lookout' while Rivera broke into the house."  *Id.*  Officer Raible "radioed for backup, describing the unfolding situation as a 'burglary in progress.'"  *Id.*

Officer Jorge Carvajal was the first officer to respond to Officer Raible's request for assistance.  The two officers met nearby to quickly "formulate[] a plan for approaching the suspects."  *Id.*  When he returned to the home, Officer Raible observed Rivera and Copeland still at the back door.  Officer Raible approached the men with his gun drawn and ordered them to get on the ground.  Officer Carvajal quickly followed, also with gun drawn.  The suspects were then placed in handcuffs.

Because Officer Raible believed that there could be more perpetrators and potential victims in the home, he made a brief initial entry into the home.  He leaned inside the back door of the home and shouted, "Sheriff's office, come out if anybody's in there, sheriff's office."  *Id.* at 1206 (internal quotation marks omitted).  After waiting approximately 10 seconds and hearing no response, Officer Raible returned to the suspects.  Officers Raible and Carvajal then searched both men.  Rivera had two kitchen knives in his pants pockets.  Officer Raible also observed fresh pry marks near the handle of the back door, which appeared to be consistent with the knives he had found in Rivera's possession.  The officers also

4

obtained identification cards from Rivera and Copeland, neither of which listed 1127 West New York Avenue as a home address. This further supported Officer Raible's and Officer Carvajal's belief "that they had interrupted an ongoing burglary." *Id.*

Additional officers who responded to the call made a second entry and "sweep" of the home to check for perpetrators or victims and observed marijuana and drug paraphernalia in plain view. This ultimately led to the procurement of a search warrant and the discovery of over $18,000 in cash, and additional drugs and drug paraphernalia. In the meantime, Rivera was arrested on an outstanding child-support warrant and Copeland was arrested for being in possession of a suspended driver's license. It was later determined that the home belonged to Montanez and that Rivera and Copeland were staying in the home with Montanez. The money was determined to be legitimate, and because the police were unable to determine who the drugs and drug paraphernalia belonged to, no charges were filed. This lawsuit followed.

In February 2016, the district court granted Officer Raible's motion to dismiss Rivera's and Copeland's unlawful-arrest claims under Federal Rule of Civil Procedure 12(b)(6), based upon qualified immunity. In December 2016, the district court granted Officer Raible's motion for summary judgment on Rivera's and Copeland's claims of unlawful seizure, also based on qualified immunity.

Rivera and Copeland now appeal the district court's order granting Officer Raible's motion for summary judgment on the basis of qualified immunity from the unlawful seizure claims, and Copeland also appeals the district court's order granting Officer Raible's Rule 12(b)(6) motion to dismiss Copeland's claim that his arrest under the suspended-license statute was unlawful.

## II.

We first address the district court's order granting summary judgment to Officer Raible on Rivera's and Copeland's claims of unlawful seizure under 42 U.S.C. § 1983.

"We review de novo the grant of summary judgment on qualified immunity grounds, drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). "We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question whether the defendant is entitled to qualified immunity under that version of the facts." *Montanez*, 889 F.3d at 1207 (alteration omitted).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting

6

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

To obtain qualified immunity, the officer "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Id.* (internal quotation marks omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Id.*

"Overcoming the official's qualified immunity defense involves two steps. First, the plaintiff must establish that the defendant's conduct violated a statutory or constitutional right."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  "Next, the plaintiff must show that the violation was clearly established." *Id.* (internal quotation marks omitted).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case."  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The Fourth Amendment prohibits an arrest that is not supported by probable cause. "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734. However, even if a police officer makes an arrest without probable cause, he is nevertheless entitled to qualified immunity if he had "arguable probable cause" to make the arrest. *Skop*, 485 F.3d at 1137 (internal quotation marks omitted). Arguable probable cause requires the court to ask "whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest." *Id.* (alteration omitted).

Officer Raible was unquestionably "acting within the scope of [his] discretionary authority" as a property crimes investigator for the Volusia County Sheriff's Office when he approached Rivera and Copeland and ordered them to get on the ground at gunpoint. *Montanez*, 889 F.3d at 1207. Accordingly, to defeat the motion for summary judgment based upon qualified immunity, Rivera and Copeland were required to show that Officer Raible violated his constitutional rights and that those rights were clearly established at the time of the searches in question.

Our decision in *Montanez* addresses issues that are virtually identical to those before us, and its holding makes clear that Officer Raible is likewise entitled to qualified immunity from Rivera's and Copeland's unlawful-seizure claims.  In the *Montanez* appeal, the responding officers (including Officer Raible) argued, *inter alia*, that Officer Raible's first 10-second entry into Montanez's home, as well as the other officers' second four-minute sweep of the home, were justified by the "exigent circumstances" posed by the suspected burglary.  We agreed.

We held that it was "clear" that the defendant officers "had probable cause to suspect a burglary," *id.* at 1211, and recited the following facts in support.

> Just before the incident, Officer Raible had been driving through an area that he knew was experiencing a spate of daytime burglaries.  He observed Rivera walking around—seemingly nervously—while talking on a cell phone in front of a house whose driveway had no cars in it.  He then watched Rivera take an unusual path around the house to the back door, where he also observed Copeland move into what appeared to be a lookout position.  After detaining and searching the men, Raible found two kitchen knives in Rivera's pockets, and observed what seemed to be fresh—and matching—pry marks near the handle of the home's back door.  Finally, Rivera's and Copeland's IDs listed addresses different from the house's.  Under these circumstances, it was perfectly reasonable for the officers to conclude that they had interrupted a burglary.

*Id.*  We also held that this "suspected burglary present[ed] an 'exigent circumstance,'" that justified the officers' initial entries to search for potential suspects and victims.  *Id.* at 1205.  Of particular relevance to this appeal, we observed that first, "and most significantly," Officer Raible's "initial entry into the

9

vestibule . . . complied with the Fourth Amendment" because it was "justified by the 'exigent circumstances' created by the suspected burglary." *Id.* at 1207-08. The reason is obvious. "[I]f police have probable cause to suspect a residential burglary—whether they believe the crime is currently afoot or has recently concluded—they may, without further justification, conduct a brief warrantless search of the home to look for suspects and potential victims." *Id.* at 1208-09. Accordingly, the officers were entitled to qualified immunity from Montanez's claims that the initial two entries violated his Fourth Amendment rights.

For the same reasons, Officer Raible is entitled to qualified immunity from Rivera's and Copeland's claims that they were unlawfully seized prior to these entries. When Officer Raible approached the plaintiffs and ordered them to the ground, he was aware of the "spate of daytime burglaries" occurring in the area. *Id.* at 1211. "He observed Rivera walking around—seemingly nervously—while talking on a cell phone in front of a house whose driveway had no cars in it." *Id.* During his continued surveillance of the home, he observed "Rivera take an unusual path around the house to the back door, where he also observed Copeland move into what appeared to be a lookout position." *Id.* Officer Raible's observations, coupled with his knowledge and experience, were "sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734. And the very same exigent

circumstances that justified Officer Raible's initial 10-second entry into the home to check for additional perpetrators and potential victims justified Officer Raible's seizure of Rivera and Copeland for a burglary in progress just seconds prior to that initial entry.

As we noted in *Montanez*, "[i]t would make no sense to compel an officer confronting a suspected burglary to quit the scene to procure a warrant, thereby jeopardizing the premises, the prospect of catching the culprits, and the safety of potential victims inside the house." 889 F.3d at 1210. "It does not meet the needs of law enforcement or the demands of public safety to require officers to walk away from a situation like the one they encountered here." *Id.* (internal quotation marks omitted). The same logic applies here. Officer Raible could not be expected to stand by and do nothing when he possessed the reasonable belief that a burglary was in progress and that the safety of innocent homeowners was potentially in jeopardy.

Plaintiffs take issue with our relying upon the *Montanez* decision too much because, in their view, our holding that Officer Raible had probable cause to make his initial warrantless entry into the home was based on facts that only became known to Officer Raible *after* the seizure—specifically, the discovery of the kitchen knives in Rivera's pockets, the fresh pry marks on the back door, and the suspects' identifications which listed a different home address. We disagree.

11

First, we noted at the outset of the opinion that Officers Raible and Carvajal had "interrupt[ed] what they reasonably believe[d] to be a residential burglary" and had "detain[ed] two suspects just outside the house." *Id.* at 1205. Accordingly, *Montanez* establishes that Officer Raible had probable cause to seize the suspects based solely upon his knowledge and observations *prior to* the seizure. Moreover, Officer Raible made his initial 10-second entry into the home to check for additional perpetrators and potential victims after the suspects were detained, but before the suspects were searched and the knives and identifications obtained. Therefore, the facts that we relied upon as justifying the first entry by Officer Raible are virtually the same as the facts that were known to Officer Raible at the moment that he seized the suspects.

Second, Officer's Raible's entitlement to qualified immunity does not require *actual* probable cause. It requires only that he had "arguable probable cause" to believe that Rivera and Copeland were engaged in a burglary. A reasonable officer in the same circumstances and possessing the same knowledge as Officer Raible could have believed probable cause existed to further detain the suspects. *See Lee*, 284 F.3d at 1195 ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." (internal quotation marks and alteration omitted)). Accordingly, we affirm the

12

district court's judgment granting Officer Raible qualified immunity from Rivera's and Copeland's claims of unlawful seizure.[1]

### III.

We also affirm the district court's dismissal of Copeland's claim that he was unlawfully arrested for being in possession of a suspended driver's license.

The grant of a dismissal based on an assertion of qualified immunity is also reviewed de novo. *Leslie v. Hancock Cty. Bd. of Educ.*, 720 F.3d 1338, 1343 (11th Cir. 2013). "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (internal quotation marks omitted). "Whether a complaint sets forth a violation is a question of law that we review *de novo.*" *Id.* (internal quotation marks omitted).

---

[1] Plaintiffs do not dispute that Officer Raible arguably had reasonable suspicion to believe that a burglary was in progress, as the district court found, but contend that subsequent caselaw has confirmed that this was the wrong standard. Relying upon our opinion in *Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015), plaintiffs assert that the officers were required to have probable cause to seize them because the seizure took place within the curtilage of Montanez's home and, because they did not have it, Officer Raible's only option was to ask the plaintiffs to come out to the street or approach them in a nonthreatening manner for a consensual encounter. However, we need not address this novel argument because Officer Raible clearly had probable cause to believe that a burglary was in progress and exigent circumstances justified the seizure and detention of the suspects. *See id.* at 1039 ("The government may not enter a person's home to effect a warrantless arrest without probable cause and either consent or exigent circumstances.").

13

Under Florida law, it is a second-degree misdemeanor to possess "any canceled, revoked, suspended, or disqualified driver license knowing that such license has been canceled, revoked, suspended, or disqualified." Fla. Stat. § 322.32(1). Copeland does not dispute that his license was suspended and he was in possession of it at the time of his arrest. Rather, he asserts that the officers lacked probable cause to arrest him unless and until they obtained evidence that Copeland had the requisite statutory knowledge to convict him. We disagree.

As the district court correctly observed, it is not necessary for a police officer to hold proof of every element of a crime to have arguable probable cause. *See Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001) (per curiam) ("Arguable probable cause does not require an arresting officer to prove every element of a crime or obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors."); *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983) (per curiam) ("While intent is an element of the crime [of passing counterfeit currency], it is not necessary in order to establish probable cause to arrest."). Although the crime of possessing a suspended license requires knowledge of the suspension, Officer Raible was not required to have evidence of knowledge to have arguable probable cause to arrest. It was reasonable to infer knowledge from possession.

14

Accordingly, we affirm the district court's order granting the officers qualified immunity on Copeland's unlawful arrest claim as well.

IV.

For the foregoing reasons, we affirm the district court's order granting summary judgment to Officer Raible on plaintiffs' claims under 42 U.S.C. § 1983 for unlawful seizure in violation of the Fourth Amendment.  We also affirm the district court's order dismissing Copeland's claim of unlawful arrest.

**AFFIRMED**