884 So.2d 1102 (2004)
REGIONAL MRI OF ORLANDO, INC., etc., Appellant,
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.
No. 5D03-3442.
District Court of Appeal of Florida, Fifth District.
October 22, 2004.
*1103 Mark A. Cornelius, of Bogin, Munns & Munns, Orlando, for Appellant.
Katherine E. McKinley and Andrea Caro, of Zimmerman, Kiser & Sutcliffe, P.A., Orlando, for Appellee.
GRIFFIN, J.
We have a question certified by the Orange County Court as an issue of great public importance, which we have agreed to accept: "Can a medical provider render a medical service under Section 627.736(5)(a), when the medical service was provided through the use of an independent contractor." We answer the question in the affirmative and reverse the appealed judgment.
On January 18, 2002, Wesley Odell ["Odell"] sustained injuries in an automobile accident. Odell was insured by defendant below, Nationwide Mutual Fire Insurance Co. ["Nationwide"], under a policy that provided personal injury protection benefits in compliance with the Florida Motor Vehicle No-Fault Law.[1] On April 8, 2002, plaintiff below, Regional MRI of Orlando, Inc. ["Regional MRI"], performed an MRI scan on Odell's spine.[2] Regional MRI then sent the MRI scan to a radiologist  Dr. Henry B. Floyd  to interpret. The scan is referred to as the "technical component" of the MRI; the reading of the scan is called the "professional component" of the MRI. After the services were completed, Regional MRI billed Nationwide $1,250 under a "global" code which included both the technical and professional components of the MRI. Nationwide refused payment, stating in an "Explanation of Benefits" letter:
You have presented a HCFA [Health Care Finance Administration] claim form and have billed the global service for this CPT [Physician's Current Procedural Terminology] code. Under the PIP statutes, you must provide a medical service to be considered for payment. The radiologist reading this film or the provider reading the nerve testing should be billing this service himself with a 26 modifier (professional reading) as he is actually providing the medical service and is usually reading the tests at multiple facilities or for multiple providers. Billing globally and paying the provider part of the proceeds or per scan or test would be considered a fee split. (1099 subcontractor, which is not a W2 employee). Since you are only performing the technical service (TC), please rebill under the correct CPT code and modifier (TC) if you wish reimbursement.... *1104 If the person reading this service for you is a true employee, please provide a copy of the W4 form they filled out for the [IRS] and provide a copy of an employment contract or a letter from the provider confirming he will file a W2 form with the IRS.
When Nationwide refused payment, Regional MRI, as assignee of Odell, filed a complaint for damages against Nationwide.
The parties entered into a joint stipulation of factual issues as follows:
1. Dr. Henry B. Floyd ["Dr. Floyd"][3] was the radiologist who interpreted the MRI films taken of Wesley Odell at Regional MRI and thus provided the professional component of the services at issue.
2. Checks from Regional MRI are payable to Dr. Floyd personally. Dr. Floyd conducts his business of reading MRIs at 51 West Haley, Orlando, Florida and at his home in Heathrow.
3. Regional MRI pays Dr. Floyd's compensation of $75.00 per read to Dr. Floyd personally.
4. Dr. Floyd is provided a 1099 at the end of each year.
5. Dr. Floyd is paid on a monthly basis, regardless of whether Regional MRI is paid for the reads Dr. Floyd performed.
6. Dr. Floyd is permitted to and does work for approximately 2 other diagnostic clinics, including competitors of Regional MRI.
7. Regional MRI requires that all reads provided to Dr. Floyd by 9:00 A.M. weekdays be completed and given to Regional MRI by noon that day, but he has flexibility as to how to accomplish the reads within those constraints.
8. Regional MRI does not exert authority and control over the manner in which Dr. Floyd performs his services, except as stated above.
9. Regional MRI does not provide Dr. Floyd with fringe benefits, such as health insurance or vacation pay.
10. Regional MRI provides Dr. Floyd only with the films and patient history. Dr. Floyd provides all other materials necessary to perform the reads.
Regional MRI filed a motion for partial summary judgment on the issue of fee splitting. Regional MRI asserted that since Dr. Floyd was paid a flat fee per read regardless of whether Regional MRI was paid by anyone for the MRI, there was no illegal fee split.
Nationwide also filed a motion for summary judgment. Nationwide contended that it was entitled to judgment as a matter of law because Regional MRI could not bill for services provided by Dr. Floyd since he was not their employee. As a secondary argument, Nationwide asserted that Regional's billing practice resulted in an illegal fee split or brokering arrangement in violation of sections 456.054 and 817.505(1), Florida Statutes.[4]
*1105 A hearing on the competing motions for summary judgment was held before the presiding county judge. Both parties agreed that there was no dispute of fact and that the only issue was which party was entitled to judgment as a matter of law. After hearing argument, the court decided that Regional MRI improperly billed for services that it did not render.
The court entered summary final judgment in favor of Nationwide. The court made the following conclusions of law:
18. Florida Statute § 627.736(5)(a)[5] requires a provider to "lawfully render" a medical service in order to be entitled to remuneration for that service. This Court finds as a matter of law that the use of the word "render" in Florida Statutes § 627.736 is clear and unambiguous. The plain meaning of the word "render" as used in Florida Statutes § 627.736(5)(a) means to "perform" the medical services for which recovery is sought. "Render" does not mean to hire another corporation or independent contractor to perform the medical services on Plaintiff's behalf. To conclude otherwise would be inconsistent with the use of the word "render" and would be contrary to the intent of the Florida Motor Vehicle Act.
19. Based on this Court's findings of facts as outlined above, this Court finds that Regional MRI did render the technical component of the MRI at issue in this matter and would have been entitled to compensation for the technical component of the service, had Regional MRI properly designated its bill to only seek compensation for the technical component the MRI at issue.
20. Regional MRI did not, however, render the professional component of the MRI service according to Section 627.736(5)(a). Therefore, Regional MRI has sought recovery for a medical service which it did not render. This Court finds that it would be in violation of Section 627.736(5)(a) to allow Plaintiff to recover insurance proceeds from Nationwide for medical services which it did not render to Nationwide's insured.

*1106 21. This Court finds that the determination of which fee schedule or consumer price index is properly applicable to these charges is beyond the scope of these motions and, therefore, this Court makes no determination as to what fee schedule and/or consumer price index may apply to the service at issue.
22. Aside from this Court's finding that Regional MRI is not entitled to bill for the professional component of the service at issue, this Court does not find that the business relationship between Regional MRI and [Dr. Floyd] constitutes an unlawful fee split.
The court then entered summary final judgment in favor of Nationwide.
Regional MRI first contends that the trial court erred in interpreting section 627.736(5)(a), Florida Statutes. Regional MRI argues that the term "render" not only means "perform," but "to provide or furnish." It further argues that it was not the intent of the legislature to prevent medical entities from billing for services provided by independent contractors.
Section 627.736, Florida Statutes (2001), provides in part:
(5) CHARGES FOR TREATMENT OF INJURED PERSONS. 
(a) Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person, or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the invoice, bill, or claim form approved by the Department of Insurance upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian.
* * *
(b)1. An insurer or insured is not required to pay a claim made by a broker or by a person making a claim on behalf of a broker.[6]
* * *
(e) All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to the insurer on a Health Care Finance Administration [HCFA] 1500 form, UB 92 forms, or any other standard form approved by the department for purposes of this paragraph. All billings for such services shall, to the extent applicable, follow the Physician's Current Procedural Terminology (CPT) in the year in which services are rendered. No statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services.
At issue is the meaning of the term "render" as used in this statute. The issue appears to be one of first impression at the *1107 District Court of Appeal level, although the issue has been dealt with many times in county courts across the state with contradictory results. We have been aided immeasurably by the excellent opinions in all these cases.
Several of these decisions provide support for Nationwide's position. In Motion X-Ray, Inc. d/b/a Nu-Best Diagnostics Labs, Inc. v. State Farm Mutual Automobile Insurance Co., 10 Fla. L. Weekly Supp. 346 (Fla. Orange County Ct.2002), State Farm's insured was referred by a chiropractor to Motion X-Ray for a videofluoroscopy test, but Motion X-Ray never performed any services on the patient. Instead, Motion X-Ray contracted with an independent corporation  Baldsacre  to perform the tests. Id. at 347. Baldsacre performed the technical component of the videofluororscopy, but it did not perform the professional component because it was not licensed to do so. Dr. Gatlin performed the professional component of the test. Id. at 348. The trial judge (the same judge as in this case) concluded as a matter of law that the use of the word "rendered" in Florida Statutes section 627.736 means to "perform'" the medical services for which recovery is sought. "Rendered" does not include hiring another corporation or independent contractor to perform the medical services on Plaintiff's behalf. As noted by the trial judge in this case during the hearing on summary judgment, however, the facts of Motion X-Ray are distinguishable from this case because Motion X-Ray had performed no service,[7] while in the case before us, Regional MRI did perform the MRI.
Another case supporting Nationwide's position is Radiology B & Services, Inc., a/a/o Raza v. Progressive Express Insurance Co., 11 Fla. L. Weekly Supp. 251 (Fla. Broward County Ct.2003), a case whose facts were essentially the same as this case. Radiology B took MRI images of the patient/insured. Radiology B then provided those images to Dr. Rivera, an independent contractor, to read and interpret. Dr. Rivera was paid $50.00 per read. The court concluded that for medical services to be "rendered," they must have been actually performed by the provider. Id. at 253. "Rendered" did not mean hiring an independent contractor to perform services on another's behalf. Id. The county judge who authored the Radiology B decision noted he had read the various conflicting cases regarding this issue, and found that those concluding to the contrary  namely Professional Consulting Services, Inc. v. Hartford Life and Accident Insurance Co., 849 So.2d 446 (Fla. 2d DCA 2003) and Radiology B & Services, Inc., a/a/o Mulligan, v. Progressive Express Insurance Co., 10 Fla. L. Weekly Supp. 935 (Fla. Broward County Ct.2003) were "poorly reasoned." Id.
There are also several cases which support the argument made by Regional MRI. In Radiology B & Services, Inc., a/a/o Mulligan, supra, Progressive's insured, Mulligan, was referred to Radiology B, which performed the technical component of the MRI. Dr. Rivera performed the professional interpretation of the MRI as a 1099 employee of Radiology B. Radiology B requested payment for both components of the MRI from Progressive, and Progressive refused to pay the bill. Radiology B filed suit to recover the bill and Progressive sought summary final judgment. Id. The court analyzed section 627.736(5)(a) and found:
The phrase "rendering treatment" is not defined within the statute. It must *1108 therefore be interpreted according to its usual and customary meaning. Webster's defines "render" as "1. to cause to be or become; make; 2. to do; perform; 3. to furnish; provide." There is nothing in the definition of the word "render" [that] supports Progressive's assertation (sic) that Plaintiff did not "render" the MRI services within the meaning of [the statute] because Dr. Rivera was paid on a 1099 basis. When construing a statute inference and implication cannot be substituted for clear expression." Courts are not permitted [to] read requirements into a statute which have not been expressly imposed by the legislature. Where the legislature intends to prohibit certain conduct under the PIP statute, it does so clearly and expressly. It is the long-standing policy of Florida courts to construe the PIP statute liberally and in favor of the insured. The PIP statute should be construed in order to give effect to the legislative purpose of providing a broader and more liberal standard of coverage. This Court therefore concludes that Plaintiff rendered MRI services at issue within the plain meaning of [the statute].
Id. at 936-937 (citations omitted). The court denied Progressive's motion for summary judgment and entered partial summary judgment in favor of Radiology B. Id. at 937.
In Oakland Park Open MRI, Inc. v. Progressive Express Insurance Co., 11 Fla. L. Weekly Supp. 259 (Fla. Broward County Ct.2003), another decision by the judge in the Mulligan case, Oakland Park submitted a request for payment to Progressive for an MRI, which was denied by Progressive on the grounds that Oakland Park only performed the technical service. Id. at 259. The arrangement was as follows. Oakland Park created and forwarded MRIs to a radiologist who was paid by Oakland Park to interpret each MRI for $55.00 per read. Oakland Park was the owner of the MRI equipment. Id. The court stated:
[Progressive] contends that [Oakland Park] did not "render" the professional component of the testing, relying on several cases involving companies that did not provide the technical component of the testing. Those cases are clearly factually inapt as it is undisputed that [Oakland Park] did provide that component. The term "rendering" as used in F.S. § 627.735(5) became part of Florida law in 1971 before the invention of MRI technology. Hence, it cannot be said that the use of that term contemplated a prohibition on the contractual arrangement presented in this case.
Clearly [Oakland Park] financed the production of the professional component on a non-contingent fee basis, transmitted the subject images to the radiologist, received and transmitted the interpretation to the ordering physical and to the insurer together with a bill submitted on the appropriate form. It cannot be reasonably asserted that [Oakland Park] was not involved in "rendering" the complete professional service that included ordering, gathering and forwarding the written interpretation, presentation of the claim to the insurer (all involving administrative expense) and the business risk that the entire claim might be subject to some other applicable insurance defense. "Rendering" does not have the simple, limited plain meaning that [Progressive] ascribes.
This issue has also been addressed in several opinions by county judges in Duval County. In Axcess MRI v. Nationwide Mutual Fire Insurance Co., 11 Fla. L. Weekly Supp. 439 (Fla. Duval County *1109 Ct.2004), the insured had been referred to Axcess MRI by his neurologist. Id. at 439. Axcess performed the technical component of the MRI and an independent contractor physician performed the professional component. Id. Axcess then sought payment for both services from Nationwide, and Nationwide refused to pay the entire bill because Axcess did not perform or "render" the professional component. Id. Axcess filed suit against Nationwide, and Nationwide filed a motion for summary judgment. Id. Because our case is factually on point with Axcess and because the analysis is thorough, we reproduce much of it here:
The Defendant in the instant case argues that the MRI provider did not "render" the professional component, but only the technical component of the service. "Rendering treatment" is not defined within the statute. In the aforementioned case the court admits same, but then goes on to discuss Webster's definition of "renders" and states:
Webster defines "render" as "1. To cause to be or become; make; 2. to do, perform; 3. to furnish; provide." There is nothing in the definition of the word "render" that supports Progressive's assertation (sic) that Plaintiff did not "render" MRI services within the meaning of F.S. 627.736(5)(a) because Dr. Rivera, (the interpreting doctor) was paid on a 1099 basis.
It seems this issue turns on whether or not the professional component is rendered by an employee of the MRI provider versus an independent contractor. This court finds that the two are indistinguishable. The independent contractor is given a 1099 for tax purposes. The total amount billed is the same, regardless of the status of the person who provides the professional component and it seems to the court that global billing in this instance is more economical [sic] swift and makes more sense, rather than requiring the filing of two forms, one filed by the entity providing the technical component and one filed by the person or entity providing the professional component.
Further, F.S. § 817.505 does not make it unlawful for Axcess MRI to pay an independent contractor to provide a professional component.
A review of the Florida Statutes does not provide the court any indication that the legislature intended to forbid MRI companies from contracting with independent radiologist [sic] to provide the professional component. In fact, recently passed PIP legislation which took effect on October 1, 2003, provides ample evidence that the hiring of an independent contractor as the interpreting radiologist is approved. The court takes judicial notice of the PIP legislation which was raised during the 2003 session and became law during 2003. The recent changes were meant to further insure that fraud would not be a part of the PIP benefits enjoyed by Floridians.
Florida Statute § 400.901 was created to provide clear regulation and guidance for the registration of clinics which handled PIP patients. The bill is called the "Health Care Clinic Act". The new act requires that the [sic]
"... a publication shall contain information that includes, but need not be limited to, information pertaining to the name, residence and business address, phone number, social security number, and the license number of the medical or clinic director, of the licenses medical providers employed or under contract with the clinic."
The plain meaning of the new language clearly manifests that the legislature *1110 presumed to know and allow that some medical providers would be "employees" and some would be "under contract", as is the case with Axcess MRI. The new statute makes no delineation between employees or contract employees.
The legislature went further and required that:
Each clinic engaged in [MRI] services must be accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American College of Radiology, or the Accreditation Association for Ambulatory Health Care, within 1 year after licensure. However a clinic may request a single 6 month extension if it provides evidence the agency establishing [sic] or good cause shown, such clinic can not be accredited within 1 year after licensure, and that such accreditation will be completed within the 6 month extension. After obtaining accreditation as required by this subsection, each such clinic must maintain accreditation as a condition of renewal of its license.
Had the legislature intended to prohibit MRI facilities from employing independent contractors to perform the professional component, that statement could have easily been added to the addition which was inserted in May, 2003.
The legislature had another opportunity to prohibit the use of independent contractors to perform the radiology interpretation which it amended Section 7 of Florida Statute 627.7321 and added paragraph 14 which states
(14) "Upcoding" means an action that submits a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed. The term does not include an otherwise lawful bill by [an MRI] facility, which globally combines both technical and professional components, if the amount of the global bill is not more than the components if billed separately; however, payment of such a bill constitutes payment in full for all components of such service.[8]
Once again, the legislature was aware of the common practice in the MRI industry to global bill for both components. In the instant case, the amount billed globally is a combination of the technical and professional component and does not exceed more than the components added together.
The Court therefore concludes that it is not unlawful for an MRI facility to hire independent contractors to perform the professional component and to globally bill for both technical and professional components to a PIP carrier.
Id. at 439-440 (emphasis in original). In two other cases, two additional Duval county judges have arrived at the same conclusion. Axcess MRI v. Nationwide Mutual Fire Ins. Co., 11 Fla. L. Weekly Supp. 727 (Fla. Duval Cty. Ct.2004); Axcess MRI v. Nationwide Mutual Fire Ins. Co., 11 Fla. L. Weekly Supp. 563 (Fla. Duval Cty. Ct.2004). We think they are correct.
When the Florida Motor Vehicle No-Fault Law, of which section 627.736(5) is a part, was amended in 2001, the legislature included legislative findings stating the purpose of the law and voicing its growing *1111 concern regarding fraud in PIP benefits cases. The findings are:
The Legislature finds that the Florida Motor Vehicle No-Fault Law is intended to deliver medically necessary and appropriate medical care quickly and without regard to fault, and without undue litigation or other associated costs. The Legislature further finds that this intent has been frustrated at significant cost and harm to consumers by, among other things, fraud, medically inappropriate over-utilization of treatments and diagnostic services, inflated charges, and other practices on the part of a small number of health care providers and unregulated health care clinics, entrepreneurs, and attorneys. Many of these practices are described in the second interim report of the Fifteenth Statewide Grand Jury entitled "Report on Insurance Fraud Related to Personal Injury Protection." [9] The Legislature hereby adopts and incorporates in this section by reference as findings the entirety of this Grand Jury report. The Legislature further finds insurance fraud related to personal injury protection takes many forms, including, but not limited to, illegal solicitation of accident victims; brokering patients among doctors, lawyers and diagnostic facilities; unnecessary medical treatment of accident victims billed to insurers by clinics; billing of insurers by clinics for services not rendered; the intentional overuse or misuse of legitimate diagnostic tests; inflated charges for diagnostic tests or procedures arranged through brokers; and filing fraudulent no-fault law tort lawsuits. As a result, the Legislature declares it necessary, among other things, to increase the punishment for certain offenses related to solicitation of accident victims and use of police reports[;] register certain clinics; subject certain diagnostic tests to maximum reimbursement allowances; prohibit the brokering of [MRI] services; ...
Ch.2001-271, § 1, at 1749-1750 Fla. Sess. Law. Serv.
The grand jury report referenced in the legislative findings above specifically addressed the concern of MRI brokering, which appears to be a main concern in this case. An example of MRI brokering is found in Medical Management Group, Inc. v. State Farm Mutual Automobile Insurance Co., 811 So.2d 705 (Fla. 5th DCA 2002) ["MMGO"]. There, plaintiff, MMGO, scheduled an MRI for State Farm's insured with Premier Advanced Imaging, an MRI facility. Premier performed the MRI and had a radiologist  who was apparently an independent contractor  interpret the scan. Premier billed MMGO $350 for the MRI. MMGO sought recovery from State Farm in the amount of $1,400 for the MRI, but the court found that Premier actually performed and rendered the test on the insured and that MMGO did not provide any treatment or service. This court decided that MMGO could not recover under the statute because MMGO had engaged in illegal patient brokering and fee-splitting. MMGO, 811 So.2d 705.
The arrangement in this case is different. Mr. Odell was sent by his doctor to Regional MRI for an MRI. Regional MRI took the scan and paid a licensed radiologist to read it and render a report which Regional provided to Mr. Odell and his physician. We do not see why Dr. Floyd's status as an employee versus independent contractor determines whether Regional "rendered" the MRI service. Regional *1112 MRI was responsible to Odell for the complete service, performed the scan, assumed the liability for the read, paid Dr. Floyd unconditionally for his work, undertook the billing and assumed the risk of loss if the MRI bill were not paid. Regional MRI is entitled to be paid.
REVERSED and REMANDED.
PETERSON and TORPY, JJ., concur.
NOTES
[1] §§ 627.730-.7405, Fla. Stat. (2002).
[2] On the same day, Odell assigned his PIP benefits and cause of action to Regional MRI.
[3] The parties also entered into a joint stipulation on November 18, 2002, that Dr. Floyd is an independent contractor and not an employee of Regional MRI.
[4] Section 456.054 prohibits kickbacks and states:

(1) As used in this section, the term "kickback" means a remuneration or payment back pursuant to an investment interest, compensation arrangement, or otherwise, by a provider of health care services or items, of a portion of the charges for services rendered to a referring health care provider as an incentive or inducement to refer patients for future services or items, when the payment is not tax deductible as an ordinary and necessary expense.
(2) It is unlawful for any health care provider or any provider of health care services to offer, pay, solicit or receive a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients.
(3) Violations of this section shall be considered patient brokering and shall be punishable as provided in s. 817.505.
Section 817.505 prohibits patient brokering and states:
(1) It is unlawful for any person, including any health care provider or health care facility, to:
(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage from a health care provider or health care facility;
(b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to a health care provider or health care facility; or
(c) Aid, abet, advise, or otherwise participate in the conduct prohibited under paragraph (a) or paragraph (b).
[5] Section 627.736(5)(a) provides:

Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person, or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the invoice, bill, or claim form approved by the Department of Insurance upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian.
[6] A "broker" is defined under the Florida Motor Vehicle No-Fault Law as "any person not possessing a license under chapter 395 [Hospital Licensing and Regulation], chapter 400 [Nursing Homes and Related Health Care Facilities], chapter 458 [Medical Practice], chapter 459 [Osteopathic Medicine], chapter 460 [Chiropractic Medicine], chapter 461 [Podiatric Medicine], or chapter 641 [Health Care Service Programs] who charges or receives compensation for any use of medical equipment and is not the 100-percent owner or the 100-percent lessee of such equipment." § 627.732(1), Fla. Stat. (2002).
[7] It should also be noted that the court concluded Motion X-Ray engaged in prohibited patient brokering and fee splitting by way of its arrangement.
[8] This section was not in effect at the time of the events in the present case. Laws 2003, c.2003-411, § 7 eff. October 1, 2003.
[9] This report can be found in Appendix 1 of RUSSEL LAZEGA, FLORIDA MOTOR VEHICLE NO-FAULT LAW/PERSONAL INJURY PROTECTION (PIP) (2002).