JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE
THIS MATTER is before the Court on Defendants', Quality Diagnostic Health Care, Inc. ("Quality"), Jorge Martinez ("Jorge"), Carlos Acebo Martinez ("Acebo"), Luis Anibal Queral, M.D. ("Dr. Queral"), Moulton Keane, M.D. ("Dr. Keane"), Ivelis Garcia ("Ivelis"), and Michel Viera, LMT ("Viera") (collectively, "Defendants"), Motion to Dismiss [ECF No. 39]. Plaintiffs filed a response in opposition [ECF No. 41], and Defendants filed a reply in further support [ECF No. 45]. For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part.
I. BACKGROUND
Plaintiffs bring this action seeking to recover money that Plaintiffs allege was unlawfully obtained by Defendants through the submission of fraudulent no-fault insurance ("personal injury protection" or "PIP") charges[1] [ECF No. 33]. Plaintiffs also seek a declaration that they are not legally obligated to pay for the reimbursement of pending PIP charges by Defendants they contend are also fraudulent. Id. Specifically, Plaintiffs allege that Quality's billing records falsely represent that Quality was operating in compliance with Florida's Health Care Clinic Act, Fla Stat. §§ 400.900- 400.995 ("Clinic Act"), Florida's Patient Brokering Act, Fla Stat. § 817.505 ("Patient Brokering Act"), and Florida's Anti-Kickback Statute, Fla Stat. § 456.054 ("Anti-Kickback Statute") when, in fact, Quality was actually non-compliant with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and thus Quality was not eligible to receive PIP reimbursement, because: (1) Quality did not have a medical director who legitimately fulfilled the statutory duties required of a medical director, id. at ¶¶ 159-188; (2) Quality failed to disclose and acted to conceal Jorge's ownership interest in its clinic licensing applications, id. at ¶¶ 78-133; and (3) Defendants paid illegal cash kickbacks to patients who agreed to seek "treatment," id. at ¶¶ 134-158.
Additionally, Plaintiffs allege that Defendants' billing records misrepresent that the underlying services were lawfully provided and billed to Plaintiffs because: (1) most of the underlying services were unlawfully performed by an unsupervised massage therapist, Viera, id. at ¶¶ 201-261; (2) Viera was not licensed to provide pertinent services, id. ; (3) in an attempt to conceal the fact that the underlying services *1294 were performed by Viera, Defendants misrepresent in billing records that Dr. Keane, a licensed physician, performed or directly supervised the underlying physical therapy services, id. ; (4) Dr. Keane and Viera were both independent contractors for whose services a healthcare clinic is not allowed to recover PIP benefits, id. at ¶¶ 65-69, 189-200; (5) the underlying services were not performed at all or were not medically necessary, id. at ¶¶ 29-38, 262-427; and (6) the underlying services were performed pursuant to kickbacks under which Defendants paid patients who agreed to seek "treatment," id. at ¶¶ 29-38, 134-158.
Based on these allegations, Plaintiffs assert the following counts: (1) Declaratory Judgment against Quality seeking a declaration that Plaintiffs do not have to pay the allegedly fraudulent, pending PIP claims; (2) violation of RICO, 18 U.S.C. § 1962(c) against Jorge, Acebo, and Ivelis; (3) violation of RICO, 18 U.S.C. § 1962(d) against Jorge, Acebo, Dr. Queral, Dr. Keane, Ivelis, and Viera; (4) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 - 501.213, against all Defendants; (5) violation of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101 - 772.19, against Jorge, Acebo, Dr. Queral, Dr. Keane, Ivelis, and Viera; (6) common law fraud against all Defendants; and (7) unjust enrichment against all Defendants [ECF No. 33].
II. STANDARD
A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). That is, the complaint "must ... contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Am. Dental Ass'n v. Cigna Corp. , 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Grp., Inc. , 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist. , 992 F.2d 1171, 1174 (11th Cir. 1993) ).
III. DISCUSSION
Defendants move to dismiss particular aspects of Plaintiffs' Amended Complaint raising five arguments: (1) Florida law does not prohibit PIP reimbursement to a licensed healthcare *1295 clinic for medical services rendered by an independent contractor; (2) Plaintiffs' RICO and state law claims fail to state a cause of action with respect to the allegations of unlawful patient brokering and kickbacks; (3) Plaintiffs fail to state a cause of action with respect to whether the Clinic Act was violated by Dr. Keane's failures to perform his statutory duties as Quality's medical director; (4) Plaintiffs fail to state a cause of action with respect to Jorge's concealed ownership; and (5) massage therapists can lawfully render physical therapy without a physical therapy license. This Court analyzes each of these arguments, in turn.
A. Florida law does not prohibit PIP reimbursement to a licensed healthcare clinic for medical services rendered by an independent contractor
Defendants first argue that Fla. Stat. § 627.736(5)(a) does not prohibit PIP reimbursement to a licensed healthcare clinic for medical services rendered by an independent contractor, and thus that Plaintiffs' Amended Complaint should be dismissed to the extent that it alleges Quality used independent contractors to render health care services [ECF No. 39 at 5-7]. This Court agrees.
This exact question has been answered by Florida's Fifth District Court of Appeals. See Reg'l MRI of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co. , 884 So.2d 1102, 1103 (Fla. 5th DCA 2004). In Reg'l MRI , the Orange County Court certified the following question to the Fifth District as an issue of great public importance: "Can a medical provider render a medical service under Section 627.736(5)(a), when the medical service was provided through the use of an independent contractor." Id. The Fifth District answered this question in the affirmative, finding that a medical provider may use an independent contractor to lawfully render medical services under Fla. Stat. § 627.736(5)(a) and thus obtain PIP reimbursement. Id. ; see also McMahan v. Toto , 311 F.3d 1077, 1080 (11th Cir. 2002) ("[A]bsent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.").
Plaintiffs do not provide any authority that contradicts the Fifth District's clear decision in Reg'l MRI . Rather, every case cited by Plaintiffs in support of their position involves illegal fee-splitting and patient brokering between two distinct entities wherein a non-medical provider is disallowed PIP benefits for its lone acts of referring a patient to a medical provider and sending the bill to the insurance company. See Prosper Diagnostic Centers, Inc. v. Allstate Ins. Co. , 964 So.2d 763 (Fla. 4th DCA 2007) ; Med. Mgmt. Group of Orlando, Inc. v. State Farm Mut. Auto. Ins. Co. , 811 So.2d 705 (Fla. 5th DCA 2002) ; Federated Nat. Ins. Co. v. Physicians Charter Services , 788 So.2d 403 (Fla. 3d DCA 2001) ; Motion X Ray, Inc. v. State Farm Mut. Auto. Ins. Co. , 10 Fla. L. Weekly Supp. 346a (Fla. Orange Cty. Court September 3, 2002); see also Fla. Stat. § 817.505(1)(b) ("It is unlawful for any person, including any health care provider or health care facility, to: ... (b) Solicit or receive a commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring a patient or patronage to or from a health care provider or health care facility"). In other words, the entities for which PIP benefits have been disallowed were pure middlemen, i.e., MRI brokers, that did not provide any medical services, did not own any medical equipment, and did not employ any medical professionals. Thus, the Fifth District's decision in Reg'l MRI is controlling here, and Plaintiffs' allegations that Quality used independent contractors to provide medical services are insufficient to demonstrate unlawful or improper activity that would have prevented Defendants from obtaining PIP reimbursement for such medical services.
Accordingly, Plaintiffs' Amended Complaint is dismissed to the extent it relies on the premise that a licensed healthcare clinic can never recover PIP benefits for medical services rendered by independent contractors.
B. Plaintiffs' RICO and state law claims do not fail to state a cause of action with respect to the allegations of unlawful patient brokering and kickbacks
Defendants next argue that Plaintiffs' RICO claims and state law claims fail to state a cause of action to the extent these *1296 counts are based upon unlawful patient brokering and kickbacks because Plaintiffs' allegations lack the required particularity under Fed. R. Civ. P. 9(b) [ECF No. 39 at 7-9]. Plaintiffs respond that Defendants' illegal patient brokering and kickback scheme is not the actual fraud alleged in the Amended Complaint as the fraud alleged in the Amended Complaint "is the submission of PIP charges to GEICO which misrepresented, among other things, that Quality [ ] was operating in compliance with Florida law and was eligible to collect PIP benefits in the first instance, when in fact it was not," i.e., mail fraud [ECF No. 41 at 11-12].
Indeed, Defendants do not contest that Plaintiffs' Amended Complaint "adequately alleges facts supporting the predicate acts of racketeering, namely, mail fraud in the submission to GEICO of thousands of knowingly false HCFA-1500 forms." Gov't Employees Ins. Co. (GEICO) v. Korn , 310 F.R.D. 125, 130 (D.N.J. 2015) (collecting cases finding the same). Likewise, Defendants also do not contest that Plaintiffs adequately allege such specific facts of mail fraud in support of their state law claims. See id. Therefore, Defendants' argument here is meritless.
Accordingly, Defendants' Motion to Dismiss Plaintiffs' RICO and state law claims for lack of specificity as to the allegations of unlawful patient brokering and kickbacks is denied.
C. Plaintiffs do not fail to state a cause of action with respect to allegations that the Clinic Act was violated by Dr. Keane's failures to perform statutory duties as Quality's medical director
Defendants also claim that Plaintiffs fail to state a cause of action to the extent Plaintiffs allege that Quality violated the Clinic Act because Dr. Keane failed to perform his statutory duties as medical director of Quality [ECF No. 39 at 9-12]. Defendants argue that the Clinic Act makes PIP reimbursement bills non-compensable only if the underlying services were unlawful at the time they were rendered. Id. Defendants note in support of their argument that Plaintiffs only complain about Quality's billing for services rendered during Dr. Queral's time as Quality's medical director before Dr. Keane became Quality's medical director. Id. at 10. Thus, Defendants contend Dr. Keane's alleged failures as Quality's medical director are not germane to whether Quality was operating in violation of the Clinic Act at the time the underlying services were rendered because Dr. Queral was Quality's medical director at that time. Id. Plaintiffs respond that Dr. Keane's alleged failures as Quality's medical director are relevant because, if Quality is currently out of compliance with the Clinic Act, then Quality is not entitled to collect PIP reimbursements, even if Quality was in compliance with the Clinic Act at the time these PIP reimbursement bills were submitted [ECF No. 41 at 13-14]. Plaintiffs are correct.
Fla. Stat. § 400.9935(3) provides:
A charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable.
Fla. Stat. § 400.9935(3). The plain language of Fla. Stat. § 400.9935(3) makes clear that a claim for reimbursement made by a clinic that is not properly licensed or that is otherwise operating in violation of the Clinic Act, constitutes an unlawful charge that is "noncompensable and unenforceable."
*1297 [2] Stated another way, if a clinic is not currently licensed, any claim - whether for PIP benefits or not - made by that clinic constitutes an unlawful charge that is "noncompensable and unenforceable." See id. In fact, the catch-all provision appended to the exclusions from the definition of a "Clinic" reinforces this point and specifically makes clear that any entity that wishes to receive PIP reimbursements, even if generally excluded from the definition of a "Clinic," will be deemed a "Clinic," and therefore must be a licensed "Clinic" under the Clinic Act in order to receive PIP reimbursements. Fla. Stat. § 400.9905(4) ("[A]n entity shall be deemed a clinic and must be licensed under this part in order to receive reimbursement under the Florida Motor Vehicle No-Fault Law, ss. 627.730-627.7405 , unless exempted under s. 627.736(5)(h).") (emphasis added).
Defendants assert that this Court's inquiry cannot end there because "if a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute or others in pari materia , the Court will examine the entire act and those in pari materia in order to ascertain the overall legislative intent." E.A.R. v. State , 4 So.3d 614, 629 (Fla. 2009) (citation omitted). Indeed, the PIP Statute and the Clinic Act are in pari materia as they refer to each other expressly and both have provisions concerning PIP benefits. See Fla. Stat. § 400.9905(4) ; Fla. Stat. § 627.736(5)(h) ; Fla. Stat. § 627.736(1)(a) 2.e.(i)-(iii); see also Miami Dolphins, Ltd. v. Metro. Dade County , 394 So.2d 981, 988 (Fla. 1981) (citation omitted) ("[L]aws should be construed with reference to the constitution and the purpose designed to be accomplished, and in connection with other laws in pari materia , though they contain no reference to each other."). In particular, Defendants point to the language in Fla. Stat. § 627.736(5)(b) 1.b. as being inconsistent with the plain language interpretation of the Clinic Act advanced by Plaintiffs because this section provides that a PIP charge is not compensable if unlawful at the time rendered [ECF No. 39 at 12; 45 at 5]. See Fla. Stat. § 627.736(5)(b) 1.b. ("An insurer or insured is not required to pay a claim or charges ... [f]or any service or treatment that was not lawful at the time rendered...."). However, it is clear that the plain language interpretation of the Clinic Act advanced by Plaintiffs is not actually inconsistent with the PIP Statute as the Clinic Act and the PIP Statute each proscribe separate yet consistent requirements that must be met in order for an entity to receive PIP reimbursements.[3] Compare *1298 Fla. Stat. § 400.9935(3), and Fla. Stat. § 400.9905(4), with Fla. Stat. § 627.736(5)(b) 1.b.
The Clinic Act simply imposes an additional requirement - current licensure as a clinic under the Clinic Act - in order for an entity to receive PIP reimbursements. In fact, the PIP Statute expressly recognizes this additional requirement imposed by the Clinic Act and allows for some limited exemptions to this rule, such as where the entity is wholly owned by a physician licensed under chapters 458 or 459 or by a chiropractic physician licensed under chapter 460.[4] See Fla. Stat. § 627.736(5)(h). These two statutes could not be more consistent in this regard. Likewise, the PIP Statute's other reference to the Clinic Act is also consistent with the Clinic Act's additional requirement of licensure as a clinic in order to receive PIP reimbursements. See Fla. Stat. § 627.736(1)(a) 2.e.(i)-(iii). Fla. Stat. § 627.736(1)(a) 2.e.(i)-(iii) simply proscribes the types of medical services for which an entity licensed as a clinic under the Clinic Act may receive PIP reimbursement. See id.[5] Thus, it appears the PIP Statute and the Clinic Act are quite the model of consistency under the plain language interpretation advanced by Plaintiffs.
Contrary to Defendants' bald assertion, and as the above analysis makes clear, there are no vested rights in PIP reimbursements [ECF No. 39 at 11]. Rather, the Florida Legislature has determined that clinics can fall out of compliance with the Clinic Act and lose their ability to receive PIP reimbursements. See Fla. Stat. § 400.9935(3) ; see also Fla. Stat. § 400.9905(4). Additionally, both cases cited by Defendants do not address the specific question posed here [ECF No. 39 at 11-12]. See *1299 State Farm Fire & Cas. Co. v. Silver Star Health & Rehab , 739 F.3d 579 (11th Cir. 2013) ; Active Spine Centers, LLC v. State Farm Fire & Cas. Co. , 911 So.2d 241, 243 (Fla. 3d DCA 2005). Instead, these cases decided that claims for PIP reimbursements were unlawful if the clinic was already out of compliance with the Clinic Act at the time the services were rendered, and both parties agree that Fla. Stat. § 627.736(5)(b) 1.b. is clear on this point [ECF No. 39 at 12; 41 at 14-15 n.10].
Therefore, this Court finds that the plain language of Fla. Stat. § 400.9935(3) is clear that, if a clinic is not currently licensed, any claim made by that clinic, including a claim for PIP reimbursement, constitutes an unlawful charge that is "noncompensable and unenforceable," regardless of the state of licensure at the time the underlying medical services were rendered. Accordingly, Defendants' Motion to Dismiss is denied to the extent Defendants argue that Plaintiffs' Amended Complaint fails to state a cause of action with respect to allegations that the Clinic Act was violated by Dr. Keane's failures to perform statutory duties as Quality's medical director.
D. Plaintiffs do not fail to state a cause of action with respect to allegations regarding the concealed ownership of Jorge E. Martinez
Defendants next assert that Plaintiffs fail to state a cause of action with respect to allegations regarding the concealed ownership by Jorge "because the alleged concealment occurred after the underlying treatment was rendered" [ECF No. 39 at 12] (emphasis in original). Defendants again argue that the PIP Statute and the Clinic Act provide that a charge is not compensable only if it was unlawful at the time rendered; later noncompliance under the Clinic Act does not render formerly lawful PIP reimbursement bills unlawful. Id. at 12-13; 45 at 6-7. However, this Court disagrees for the same reasons announced, supra , Section III.C, and therefore, Defendants' Motion to Dismiss is denied as to this argument as well.
E. Plaintiffs' RICO and state law claims do not fail to state a cause of action against Acebo
Defendants next contend that Plaintiffs' RICO and state law claims against Acebo fail to state a cause of action because Acebo was "neither the owner nor an officer of Quality [ ] when the underlying claims were made" [ECF No. 39 at 14-15]. Defendants argue once again that the PIP Statute and the Clinic Act provide that a charge is not compensable only if it was unlawful at the time rendered; later noncompliance under the Clinic Act does not render formerly lawful PIP reimbursement bills unlawful. Id. However, again, this Court disagrees for the same reasons announced, supra , Section III.C, and therefore, Defendants' Motion to Dismiss is also denied as to this argument.
F. Unsupervised massage therapists cannot lawfully render physical therapy without a physical therapy license
Last, Defendants argue that Plaintiffs fail to state a cause of action to the extent the allegations are premised upon the notion that an unsupervised massage therapist cannot lawfully render physical therapy without a physical therapy license [ECF No. 39 at 15-20]. Defendants recognize that the practice of physical therapy generally requires licensure under the Physical Therapy Act. See Fla. Stat. §§ 486.011 - 486.172. However, Defendants point to the exemptions to the physical therapy licensing requirement found in Fla. Stat. § 486.161 as the basis for allowing a massage therapist to perform physical therapy without a license and without *1300 supervision. Fla. Stat. § 486.161(1) provides:
No provision of this chapter shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the statutes applicable to the profession of chiropractic physician, podiatric physician, doctor of medicine, massage therapist, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath.
Fla. Stat. § 486.161(1).
Defendants interpret this section as a wholesale exemption from the physical therapy licensing requirements for certain enumerated professionals, including massage therapists [ECF No. 45 at 8]. That is, Defendants argue that Fla. Stat. § 486.028(1) allows these enumerated professionals, including massage therapists, "to practice physical therapy without a license." Id. In support of their position, Defendants cite to State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Florida, Inc. , 881 So.2d 557 (Fla. 3d DCA 2004) [ECF No. 39 at 16-17; 45 at 8-10],[6] which answered the following certified question in the affirmative:
Whether a person defined as a medical assistant under section 458.3485, Florida Statutes (2001), but not licensed as a physical therapist under chapter 486, Florida Statutes (2001), may 'lawfully render' any of the physical therapy modalities enumerated in section 486.021(11), Florida Statutes (2001) for purposes of qualifying for payment of assigned personal injury protection benefits under section 627.736(5)(a), Florida Statutes (2001).
Universal Med. Ctr. , 881 So.2d at 559. In Universal Med. Ctr. , Florida's Third District Court of Appeals noted that, "[u]nder section 458.3485(1), Florida Statutes (2001), a medical assistant is permitted to assist 'in all aspects of medical practice under the direct supervision and responsibility of a physician,' " and found that "[t]he physical therapy modalities at issue here, the application of hot packs, electrical muscle stimulators, ultrasound therapy devices, and mechanical massage, all involved either relatively simple modalities performed to assist the physician with patient treatments or the use of standard medical equipment." Id. at 559-60. Because the specific modalities and the use of the medical equipment at issue fell within the ordinary and customary practice of the respective supervising physician, the Third District found such physical therapy performed by these medical assistants exempt from the Physical Therapy Act as incidental to the supervising physician's practice pursuant to Fla. Stat. § 486.161(1). Id. at 560. In other words, the Third District found that the physician was practicing medicine under his medical license, which included supervising these medical services *1301 performed by the medical assistants, and the Physical Therapy Act's exemptions make certain not to restrict the physician's ability to practice medicine under the physician's medical license. See id.
Therefore, the Third District's decision simply recognizes that Fla. Stat. § 486.161(1) allows professionals licensed in enumerated areas to continue to perform medical services already covered under their professional license, notwithstanding the fact that the use of physical agents as part of those medical services also constitutes the "practice of physical therapy" under the Physical Therapy Act. Contrary to Defendants' position, Fla. Stat. § 486.161(1) is not an unfettered right for these enumerated professionals to practice physical therapy outside of their professional license; it is an exemption to allow these professionals the full use of their professional license, despite the fact certain services they may perform under their professional license are also regulated as the "practice of physical therapy."
As Plaintiffs argue, this means that a massage therapist like Viera - who provides certain unsupervised services that would qualify as the "practice of physical therapy" but which are exempted from regulation under the Physical Therapy Act "as a part of, or incidental to" the lawful practice of his massage profession - is merely practicing massage under his massage license when performing services that are also regulated under the Physical Therapy Act [ECF No. 41 at 17]. Thus, Plaintiffs are correct that, to the extent Viera lawfully performed any services without supervision,[7] such services could only have been massage therapy services pursuant to his massage therapy license, which are no longer allowed PIP reimbursement as proscribed by Fla. Stat. § 627.736(1)(a) 5. Accordingly, Defendants' Motion to Dismiss is denied on this basis as well.
IV. CONCLUSION
Based on the foregoing, it is evident that Plaintiffs' allegations are largely sufficient and grounded in sound legal interpretation. However, Plaintiffs' allegations that Quality used independent contractors to render health care services are insufficient to support any cause of action because Plaintiffs are incorrect in their premise that Fla. Stat. § 627.736(5)(a) prohibits PIP reimbursement to a licensed healthcare clinic for medical services rendered by an independent contractor.
Accordingly, it is hereby:
ORDERED AND ADJUDGED that Defendants' Motion to Dismiss [ECF No. 39] is GRANTED in part and DENIED in part, as follows:
1. Defendants' Motion to Dismiss is granted solely with respect to Plaintiffs' allegations that Quality unlawfully used independent contractors to perform medical services for which it seeks PIP reimbursement. Plaintiffs shall file an amended complaint within 21 days.
2. Defendants' Motion to Dismiss is denied in all other respects.
DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of February, 2019.

No-fault insurance benefits are regulated generally under Florida's Motor Vehicle No-Fault Law ("PIP Statute"), Fla Stat. §§ 627.730 -627.7405.

Indeed, Defendants expressly concede that "[t]he Clinic Act is clear and unambiguous when read in isolation" and "thus susceptible to the interpretation that [Plaintiffs are] advancing" [ECF No. 45 at 5].

Of course, these separate requirements make sense when viewed in the context of the separate purposes ascribed to the Clinic Act - general regulation of the licensure of healthcare clinics - and to the PIP Statute - regulation of no-fault insurance benefits. See Fla. Stat. § 400.990(2) ("The Legislature finds that the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers. The purpose of this part is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration."); Fla. Stat. § 627.731 ("The purpose of ss. 627.730-627.7405 is to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits, for motor vehicles required to be registered in this state and, with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience."). Clearly, the Clinic Act is more concerned with a clinic's continuing licensure and the effect thereof on a clinic's broader ability to bill for any medical services rendered (which includes charges outside the PIP context) than whether a bill for medical services qualifies specifically as a lawful PIP charge. Thus, it is logical that the Clinic Act would incentivize clinics to stay compliant with the Clinic Act in order to continue to bill or receive any amounts for medical services rendered, including for PIP reimbursements, as this addresses the broader concerns the Clinic Act was designed to address.

Notably, the limited exemptions found within Fla. Stat. § 627.736(5)(h) are consistent in nature with the exclusions from the definition of a "Clinic" under the Clinic Act. Compare Fla. Stat. § 400.9905(4), with Fla. Stat. § 627.736(5)(h). In reviewing these limited exemptions under Fla. Stat. § 627.736(5)(h) and the exclusions from the definition of a "Clinic" under the Clinic Act, there is a clear and consistent legislative intent to require a qualified and properly licensed person or entity to remain legally responsible for the ongoing operations of any healthcare facility submitting PIP charges for reimbursement. Indeed, under Fla. Stat. § 400.9935(1), a licensed clinic has continuing obligations to take actions with respect to records and billing. Thus, in a situation such as here, where a clinic allegedly falls out of compliance with the Clinic Act after rendering the medical services at issue due to no longer having a qualified "medical director," there would be nobody responsible for conducting the required systematic reviews of clinic billings to ensure that these clinic billings were lawful charges as submitted and also nobody to "take immediate corrective action" if any submitted billings were found to be unlawful. See Fla. Stat. § 400.9935(1). Accordingly, it appears that the Clinic Act, even where it intersects with the PIP Statute, is quite consistent in incentivizing the continuing licensure of healthcare clinics above all else.

Fla. Stat. § 627.736(1)(a) 2.e.(i)-(iii) further requires that a licensed clinic be "accredited by an accrediting organization whose standards incorporate comparable regulations required by this state" or meet other defined criteria, such as having a medical director licensed under chapters 458, 459, or 460, in order for a clinic to be eligible to receive PIP reimbursement for these medical services.

Defendants also cite five pending state actions involving the same parties wherein a Florida county court determined that massage therapists can lawfully render physical therapy without a license pursuant to Fla. Stat. § 486.161(1), and further determined that Fla. Stat. § 627.736(1)(a) 5 does not bar PIP reimbursement to a licensed clinic for physical therapy services rendered by a licensed massage therapist to the extent such services do not qualify as massage under Fla. Stat. § 480.033(3) [ECF No. 39 at 19-20]. However, this Court disagrees with said determinations, and they are not binding on this Court. See Hall v. Stewart , 297 F.Supp.2d 1328, 1333 (S.D. Fla. 2004) ("Circuit court and county court opinions are not typically cited as precedent."); see also Thomas ex rel. Thomas v. Roberts , 323 F.3d 950, 953 (11th Cir. 2003) (finding that a law is "clearly established" by precedents of the Supreme Court, the Eleventh Circuit, or "the highest court of the state in which the case arose"); McMahan , 311 F.3d at 1080.

If, for example, Viera was acting as a medical assistant under the supervision of a licensed physician, then PIP reimbursement would be allowed for his services as incidental to the supervising physician's medical practice. See Universal Med. Ctr. , 881 So.2d 557. However, Plaintiffs' Amended Complaint alleges that Viera performed the services at issue as an unsupervised massage therapist [ECF No. 33].